**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 CR 318 |
| | ) | Judge Robert W. Gettleman |
| | ) | |
| JONATHAN SMALLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S POSITION PAPER ON SENTENCING**

Defendant, JONATHAN SMALLEY, by and through his attorneys, BLEGEN &

GARVEY, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and 18 U.S.C. §

3553(a), as well as the Sixth Amendment to the Constitution of the United States and the

Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005), respectfully submits

the following objections to the updated presentence investigation report ("PSR") and position

paper on sentencing.

### I.      Introduction

The Court is no doubt familiar with the wide sentencing discretion provided under 18

U.S.C. § 3553(a) since the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005),

and reiterated that discretion in cases such as *United States v. Rita*, 551 U.S. 338 (2007), and

*Gall v. United States*, 552 U.S. 38 (2007)[1].  The statutory sentencing factors found in § 3553(a)

---

[1] The *Gall* court explained the post-*Booker* sentencing procedure as follows:

> "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines.  As a matter of administration and to ensure nationwide consistency, the Guidelines should be starting point and the initial benchmark.  The Guidelines are not the only consideration, however.  Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In doing so, he may not presume that the

provide the Court with the framework upon which to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing by taking into account, among other things, the nature and circumstances of the offenses, the history and characteristics of the defendant, and the need for the sentence imposed to satisfy the purposes of sentencing.

Mr. Smalley has no objection to the PSR's guideline calculation. Based on a total offense level of 23 and a criminal history category III, the advisory guideline range is 57 to 71 months' imprisonment. Given the circumstances of Mr. Smalley's case, however, the defense submits that a sentence below the advisory guideline range is appropriate.

## II.      The Circumstances of the Offense

Mr. Smalley admits that between 2014 and 2016, he purchased a number of firearms intending to resell them to family members and other individuals in the Chicago area. He knew that at least some of these individuals could not legally purchase or possess firearms themselves.[2] Moreover, he admits he possessed at least some of the firearms after sustaining a felony conviction. Mr. Smalley is deeply ashamed of his conduct, and plans to personally express his remorse during the sentencing hearing.

Though he did not think about it at the time, Mr. Smalley understands the seriousness of firearms offenses, and the reasons behind the prohibition against felons possessing firearms. In

---

Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance…After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."

[2] Mr. Smalley receives a four level enhancement under 2K2.1(b)(b)(B) because he transferred some of the firearms with "knowledge, intent, or reason to believe that they would be used or possessed in conjunction with another felony offense." PSR, p. 18, ¶80-83. Mr. Smalley does not object to this enhancement because he knew that at least some of the people to whom he transferred the firearms were felons, and therefore, he also knew that they would be committing the felony offense of possessing a weapon as a felon as soon as the firearms were transferred. While he admits that he should have thought more critically about how the recipients intended to use the firearms, he did not know that they intended to commit "crimes of violence" with the firearms at the time he transferred them.

the nearly two years since his arrest, Mr. Smalley has had a chance to think critically about his conduct, and gain a greater understanding of the dangers associated with selling firearms without a license. While he never meant to harm anyone, it distresses him greatly to know that his actions may have contributed to the violence that plagues Chicago. Mr. Smalley prides himself on his family, and it deeply troubles him to know that his conduct may have caused anguish to other families affected by firearm-related crimes.

### III.     Mr. Smalley's History and Characteristics

Mr. Smalley wants nothing more now than to complete punishment for his offense, and to continue to support his family. His prior work history and good conduct while on pretrial release in this case indicates that he can lead a law abiding nd productive life and that he is unlikely to run afoul of the law again. As noted in his mother, Tamra Cotter's, letter,[3] Mr. Smalley has worked steadily throughout his teenage and adult life. He got his first job at age sixteen and maintained employment while simultaneously attending high school and just over a year of college. Save for two brief periods of unemployment, he has worked consistently as an adult, and through hard work, has advanced beyond entry-level positions. As his mother writes, Mr. Smalley "has taken managerial positions and proudly served his subordinates in order to help them [advance] at their jobs."

Perhaps the greatest indication of Mr. Smalley's work ethic and performance is the fact he was rehired by his current company, the Plumbing Warehouse, after having to leave to complete a short term of imprisonment in Louisiana. This is evidence that Mr. Smalley's value as a trusted employee outweighed any doubts or stigma created by his criminal conviction. Doug

---

[3] Letters submitted in support of Mr. Smalley will be delivered to the Court, the Government, and Probation, rather than being publicly filed on the docket.

Brantley, Mr. Smalley's supervisor, writes, "I have trusted [Mr. Smalley] with company assets & I continue to do so. He is a valuable member of our team."

Mr. Brantley was also aware of this case when he rehired Mr. Smalley. In fact, Mr. Smalley shared the details of this case with Mr. Brantley before accepting employment with the Plumbing Warehouse, as he was concerned that his legal situation could negatively impact the company. This did not stop the company from choosing to rehire him—even knowing full well that Mr. Smalley may have to once again leave his job on short notice to complete his punishment in this case. Mr. Brantley writes, "Jonathan has expressed a desire to grow with the company & to be considered for a promotion when he is prepared. My goal is to mentor Jonathan & help him realize his goal."

Notably, for the last several months, Mr. Smalley has held down two jobs—one at the Plumbing Warehouse, and another at A&D Car Hauler. He works approximately 65 hours each week to support his family. He has never violated the conditions of his pretrial release[4]. Despite the fear and anxiety caused by this case, and the potential for a lengthy prison term looming in his future, Mr. Smalley has comported himself like a model citizen since his release from incarceration in December 2016. This is further evidence that a guideline sentence in the Bureau of Prisons is not required to rehabilitate Mr. Smalley. Rather, Mr. Smalley has already begun this process himself.

### IV. Mr. Smalley's Family

Undoubtedly, the most traumatic part about this case for Mr. Smalley is the possibility that he will be separated from his family for a substantial period of time. He understands that he

---

[4] The PSR notes that Mr. Smalley "has not complied with all Court ordered conditions of release" because he sustained a probation violation in his Louisiana case while on pretrial release in this case. The state probation violation, however, was based on conduct (failing to report) that occurred *before* this case was charged.

is entirely to blame for this. However, he humbly asks the court to consider his unique family circumstances when determining an appropriate sentence.

Mr. Smalley has four children and two step-children between the ages of 8 months and fifteen years old. Mr. Smalley is extremely dedicated to his family. As his girlfriend, Olivia Cezar, writes, he "shares a unique bond with each of his children" and intent on being the "best father." He currently coaches his 10 year old son's basketball league, and has also plays an active role in his toddler-age daughter's life, reading her books and helping her with her hair. Ms. Cezar, the mother of Mr. Smalley's infant son, writes,

> I can honestly say I was highly impressed and appreciative with the role Jonathan played throughout the pregnancy…the birth, and the few months [our son] has been a part of our world. It is truly an honor to know that Jonathan takes his role as a father as one of his most cherishable priorities. His outlook as a father is more of 'I am blessed to be the father of my children and I show my gratitude to God by being an impact within their lives.' Jonathan's actions show that he believes being a father goes beyond the average standards that some males possess, which is, 'These are my children and I take care of my responsibilities.'

Also impressive is the bond that Mr. Smalley has developed with his stepsons, who are fifteen year old twins. Mr. Smalley came into the twins' lives just as they were becoming teenagers. For many men, developing a relationship with a girlfriend's teenage sons would have proven impossible. Over the last three years, however, Mr. Smalley has created "a strong and impactful fatherhood bond with [the twins]." While the twins' biological father is actively involved in their lives,

> [T]he boys hold Jonathan in high regards and look up to him as a father too. Jonathan participates in their athletic curriculum and attends parents' events within their school and their involvement in their Navy Cadet League. As teenage boys the twins often seek Jonathan's advice- covering all aspects (academics, sports, college prepping, life obstacles, and so forth)…He is very adamant about being a positive role model in their lives and making special effort

to utilize their teenage years as the molding years before they
become young adults.

It is Jonathan's relationship with his four year old daughter, Layla, however, that differentiates his circumstances from many others the Court sees. Layla was born with a rare congenital brain disease, pyruvate dehydrogenase deficiency (PDHD), and requires 24 hour medical care and assistance. Mr. Smalley is very involved in Layla's life and her care. Ms. Cezar writes, "Throughout the time I have known Jonathan, and til this day, Layla is a primary concern and responsibility to Jonathan. He plays a pivotal role in attending to her physical needs. He is cognizant of her restrictions and makes unique efforts to maintain a bond and show his love for her." Jonathan's mother notes that Jonathan and Layla's mother are often required to stay awake throughout the night to care for Layla when a nurse is not present. They have also spent weeks in the hospital with her.

Layla has already lived beyond the life expectancy predicted by her doctors, and Mr. Smalley is naturally fraught with worry over her condition. Mr. Smalley learned how hard it was to be away from Layla and his other children while incarcerated for six months in Louisiana. That time away from his children, and not knowing whether he would see Layla again, hardened his resolve to never put himself in a position to risk being separated from his family again.

Mr. Smalley and his wife Shavondra Smalley are in the process of getting dicorced. Nevertheless, Shavondra also has nothing but good things to say about Mr. Smalley's work ethic, personality, and concern for others. "He have always been a provider for his family. I am not only speaking for myself and the children, but he will go out of his way to help his mother and siblings as well. If he have it you can count on having it too. Jonathan is like the backbpone for his family and can be viewed as the problem solver. He does not like conflict by any means." Shavondra is even more effusive regarding Mr. Smalley's relationship with his children. "I will

start off with informing you that Jonathan is a great father to his kids.  I cannot take that away from him.  He loves them, provides for them, and takes up time with them."  With regard to Layla, Shavondra explains that, "during all the trials we faced during her first year of life, Jonathan had been there to support her."  He was also helped care for and support Layla during a recent hospitalization.

### V.     Conclusion

Mr. Smalley understands he deserves punishment for his conduct, and he is ready to accept whatever sentence this Court may impose.  Mr. Smalley's personal characteristics, however, make clear that a lengthy term of imprisonment is not necessary in this case.  Mr. Smalley humbly asks for a chance to continue to care for his family, and continue to be the responsible, hardworking, and law abiding individual he has proven himself to be while pretrial release.  For all of these reasons,  Mr. Smalley respectfully requests that this Court impose a sentence below the advisory guideline range.

Respectfully submitted,

s/Patrick W. Blegen                              
**PATRICK W. BLEGEN**, Attorney for Defendant, Jonathan Smalley.

**BLEGEN & GARVEY**
53 W. Jackson Blvd.
Suite 1437
Chicago, IL 60604
(312) 957-0100