UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 318 |
| v. | ) | |
| | ) | |
| JONATHAN SMALLEY | ) | Judge Robert W. Gettleman |

## **Government's Sentencing Memorandum and Objections to the PSR**

For at least two years, the defendant trafficked handguns to Chicago. He knew that many, if not all, of the firearms he sent to Chicago would be illegally possessed or used to commit crimes. Defendant knowingly provided fuel for the violence that plagues Chicago. The Court should sentence him to a term of imprisonment between nine and ten years.

## I. Background

As set forth in the plea agreement and the Presentence Investigation Report ("Report"), the defendant began purchasing firearms to resell no later than February 2014.[1] Over the next 27 months, the defendant purchased 25 additional firearms. He provided those guns to individuals in the Chicago area who he knew were not allowed to possess them; sixteen of the twenty-

---

[1] As noted in the Report, the defendant purchased seven additional firearms between May 2009 and November 2012. None of those guns were recovered during the search of his home.

five firearms have been recovered by law enforcement officers in the Chicago area.

The defendant knew that the guns he was trafficking were being used for nefarious purposes, as illustrated by text messages recovered from the defendant's phone. For example, during a March 28, 2015 exchange, the defendant's brother, a convicted felon, referenced a gun that he "had to toss." In a February 26, 2016 text message, another individual, also a convicted felon, told the defendant that he needed a gun that would not jam.

The defendant was arrested on May 13, 2016, as he brought another gun from Mississippi to Chicago. He was bringing that gun to his brother-in-law, also a convicted felon.

## II. Objection to the Report

The report assigned the defendant a base offense level of 14. Report ¶¶ 61–67. The government submits that a base offense level of 20 applies because (a) the offense involved a firearm with a high-capacity magazine and (b) the defendant was a prohibited person at the time he committed the instant offense.

At least four of the guns trafficked by the defendant were outfitted with extended magazines. A pistol purchased by the defendant on July 9, 2014, was recovered in Chicago with an extended magazine eight days later. Report

¶ 64. On August 6, 2014, the defendant's brother-in-law asked him to get a "glock 17 wit a 30 [round magazine] on it." On August 8, 2014, the defendant purchased a Glock Model 22. On June 25, 2016, the Chicago Police Department recovered a Glock purchased by the defendant four months earlier. The gun was outfitted with a 30-round magazine. Finally, on September 2, 2015, the defendant texted a photograph of himself holding a gun with an extended magazine.

The Report concludes that the defendant is not subject to the 20-level base offense level based on a lack of evidence that he possessed a firearm with an extended magazine *after* he was convicted of a felony. The Report is incorrect for two reasons. First, the defendant was a prohibited person at the time of his September 2, 2015 possession. Second, the Guidelines' definition of "offense" includes relevant conduct.

### A. **The defendant was a prohibited person on September 2, 2015.**

The Guidelines define a prohibited person by reference to 18 U.S.C. § 922(g) and (n). USSG § 2K2.1, comment. (n.3). Section 922(n) defines the term to include "any person who is under indictment" for a felony. 18 U.S.C. § 922(n). The statute defines the term "indictment" to include indictments and informations. 18 U.S.C. § 921(a)(14). The Eighth Circuit, noting Congress's purpose of preventing those charged with felonies from possessing

3

firearms, has even concluded that the term applies to felony complaints. *United States v. Brede*, 477 F.3d 642, 643–44 (8th Cir. 2007).

The defendant was arrested in his Louisiana case on June 5, 2015. Thus, on September 2, 2015, when he took a photograph of himself holding a firearm with an extended magazine, he was a prohibited person. Accordingly, the base offense level should be 20.

### B. The Guidelines define "the offense" to include relevant conduct.

For a base offense level of 20 to apply, the government must establish two things: (1) that the defendant "was a prohibited person at the defendant committed the instant offense" and (2) that "the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine." USSG § 2K2.1(a)(4)(B). The Guidelines define the term "offense" to include "the offense of conviction and all relevant conduct." *Id.* § 1B1.1, comment. (n.1(H)). The defendant's September 2, 2015 possession of a firearm is undoubtedly relevant conduct. Because "offense" includes relevant conduct, in this case, "the offense" as used by the Guidelines, spanned from at least February 2014 through his arrest. Because the defendant was a prohibited person and possessed a firearm during the course of that offense, a base offense level of 20 applies.

## III. Guideline calculation

After including the 20-level base offense level, the final offense level is 29, and the criminal history category is III, resulting in a guideline range of 108 to 120 months' imprisonment.

## IV. Sentencing recommendation

### A. Term of imprisonment

The United States requests that the Court sentence the defendant to a term of imprisonment within the guideline range, a term of imprisonment of nine to ten years.

Trafficking firearms is an extremely serious offense, particularly so in this city, at this time. The defendant provided guns to people in Chicago who could not legally purchase them on their own. Those guns were then used in entirely predictable ways, turning up at crime scenes and being seized by law enforcement officers across the Chicago area.

Sixteen of the 25 guns the defendant trafficked between February 2014 and May 2016 have been recovered by law enforcement. The circumstances of some of the recoveries highlight the seriousness of the offense and the defendant's willingness to arm criminals in Chicago:

- On April 24, 2014, Chicago police responding to a call of shots fired pursued a rented van. When the van stopped, four men jumped out. One of them had a gun with only six rounds inside of its fifteen-round magazine. The defendant had purchased the gun less than a month earlier, on February 28, 2014.

5

- On April 28, 2014, Illinois State Police responded to a call that four men had crashed a rented van and then fled. An officer recovered a gun from the car. The defendant purchased that gun on April 10, 2014.

- On July 17, 2014, CPD officers recovered a car that had been rented in Detroit and then reported stolen. Inside, they found a gun loaded with 31 rounds of ammunition. The defendant had purchased that gun eight days earlier.

- On March 2, 2015, officers pursued two men who had run across traffic. One of them threw a loaded gun. The gun had been purchased by the defendant in March 2014. Forensics revealed that it had been used in a homicide in May 2014.

- On March 25, 2016, officers observed two shooters jump into a car driven by the defendant's cousin. Upon arresting one of them men, officers found a gun with six rounds in its fifteen-round magazine located nearby. The gun had been purchased by the defendant in March 2015.

- On June 25, 2016, officers recovered a gun loaded with thirty rounds from under the mattress of a man on probation for a firearms offense. Forensics revealed that the gun had been used in a May 3, 2016 shooting. The gun was purchased by the defendant on February 26, 2016.

- On September 1, 2017, Harvey police officers approached a group of people in and around a van. As the police approached, someone yelled, "Police, break out!" Officers found a gun in the pocket of the van. Forensics revealed that it had been used in shootings on April 15 and April 19, 2017. The defendant purchased the gun on March 4, 2016.

The short time between the defendant's purchase of guns and their use in crimes establishes that the defendant was selling guns directly to those who were using them. Guns provided by the defendant have been used in at least six shootings. One of the guns was used to kill someone only two months after the defendant bought it.

The defendant's text messages also establish his knowledge. The defendant's brother sent him several text messages inquiring about purchasing guns. In one of those messages, while trying to describe a gun he wanted, the brother stated, "U remember thT gun u sent me that I had to toss[?]" The defendant responded, "Naw."

After sending the September 2015 photo of a gun with an extended magazine, the defendant asked the text recipient, "U got shells?"

In February 2016, while discussing the guns the defendant had available, one of his buyers texted him, "Damn I need something bro dis bitch weak it keep jammin."

Most alarmingly, on October 14, 2015, during a text conversation, the defendant's brother told him, "Ok and I shot somebody he ain't dead doe." Expressing no surprise, the defendant responded, "Don't text it. Call me later."

The defendant does not have a significant criminal history. He has no convictions for violent crimes. He has provided support for his children and is clearly supported by his family. The defendant was gainfully employed through most of the period that he was trafficking firearms. There does not appear to have been a financial motivation for the crime.

The defendant's criminal history is not as serious as many who come before this Court, and he did not serve significant jail time before being

charged in this case. But he committed this crime while on probation. Moreover, a significant sentence is necessary to deter others from trafficking in firearms. Those who would illegally sell guns must know that, by contributing to the flow of illegal firearms, which fuels violence, they risk significant jail time. The requested sentence would also prevent further crimes by the defendant, providing a significant disincentive to resume selling guns.

### B. Fine

Based on the analysis set forth in paragraphs 174 through 179 of the Report, the government does not request that a fine be imposed.

C. **Supervised Release**

The United States submits that the conditions of supervised release set forth in the Report should be entered in order to protect the public from further crimes and to provide the defendant with needed correctional treatment.

                                  Respectfully submitted,

                                  JOHN R. LAUSCH, JR.
                                  United States Attorney

By: s/ *Scott M. Edenfield*
     Scott M. Edenfield
     Assistant United States Attorney
     219 South Dearborn Street
     Chicago, Illinois 60604